UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ILIRIJANA SADE ZETTEL                                                                    Plaintiff

v.                                                                      Civil Action No. 3:23-cv-116-RGJ

SERVICE FINANCIAL CO.                                                                  Defendant

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

This case comes before the Court on three pending motions. Defendant Service Financial Co. ("SFC") moves to dismiss the action for lack of subject matter jurisdiction and failure to state a claim. [DE 4]. Plaintiff Ilirijana Sade Zettel ("Zettel") seeks leave to file an amended complaint [DE 9] and moves to certify her constitutional challenge of the Kentucky long-arm statute to the Kentucky Attorney General. [DE 6]. Briefing is complete and the motions are ripe. [DE 10; DE 11; DE 12; DE 13]. For the reasons stated below, Zettel's motion to amend is **DENIED**, SFC's motion to dismiss is **GRANTED**, and Zettel's motion to certify [DE 6] is **DENIED** as moot.

**BACKGROUND**

This case arises out of a Kentucky debt collection action brought after Zettel defaulted on a vehicle retail installment sales contract ("RISC"). In 2014, Zettel purchased a 2004 Pontiac Grand Am from Belgray Auto Sales, Inc. ("Belgray") in Louisville, Kentucky. [DE 1, Compl. at 2]. Belgray financed the purchase with a RISC. [*Id*.]. When Zettel later defaulted on the debt, Belgray repossessed the vehicle and sold it at auction. [*Id*.]. The remaining deficiency balance on the debt was then assigned to SFC. [*Id*.].

In 2018, SFC filed suit in Jefferson District Court to collect the RISC's deficiency balance from Zettel, who was no longer a Kentucky resident. [*Id*. at 3]. Service of process was

1

accomplished through the Kentucky long-arm statute, K.R.S. 454.210, which provides for serving out-of-state defendants:

> The Secretary of State shall, within seven (7) days of receipt thereof in his office, mail a copy of the summons and complaint to the defendant at the address given in the complaint. The letter shall be posted by certified mail, return receipt requested, and shall bear the return address of the Secretary of State. The clerk shall make the usual return to the court, and in addition the Secretary of State shall make a return to the court showing that the acts contemplated by this statute have been performed, and shall attach to his return the registry receipt, if any. Summons shall be deemed to be served on the return of the Secretary of State and the action shall proceed as provided in the Rules of Civil Procedure.

K.R.S. 454.210(3)(c). The Secretary of State sent the summons and complaint to Zettel's North Dakota address via certified mail and made return to the state court affirming that the requirements of service had been accomplished. [*Id.*]. Zettel did not receive the Secretary of State's service, however, and the package was returned "unclaimed." [*Id.*]. A notice of the failure to serve was filed in the state court record. [DE 1-2 at 19].

SFC secured a default judgment against Zettel, who had not answered the complaint. [DE 1 at 3; DE 1-3 at 21–28]. SFC then garnished Zettel's wages to collect on the default judgment. [DE 1 at 4].

Zettel has not moved in the state court to set aside the default judgment. [DE 4 at 39]. Instead, she brings this action, asserting claims on behalf of herself and classes of other similarly situated individuals, against SFC for violations of the Fair Debt Collection Practices Act ("FDCPA"), unjust enrichment, wrongful garnishment, and a request for declaratory relief stating that the Kentucky long-arm statute is unconstitutional. [DE 1 at 6–11].[1] Zettel now seeks to amend the complaint to add an additional § 1983 claim against SFC. [DE 9].

---

[1] Any analysis of Zettel's FDCPA, § 1983, unjust enrichment, and wrongful garnishment claims in this Order applies with equal force to the corresponding class allegations, which raise identical claims. [*See* DE 1; DE 9-1].

**STANDARDS**

    **I.**        **Motion to Amend**

"When there are pending before the court both a dispositive motion and a motion to amend the complaint, the court must first address the motion to amend complaint." *Gallaher & Assocs., Inc. v. Emerald TC, LLC*, No. 3:08-CV-459, 2010 WL 670078, at *1 (E.D. Tenn. Feb. 19, 2010) (citing *Ellison v. Ford Motor Co.,* 847 F.2d 297, 300 (6th Cir.1988)). Rule 15 provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "The thrust of Rule 15 is to reinforce the principle that cases should be tried on their merits rather than the technicalities of the pleadings." *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982).

"In deciding whether to grant a motion to amend, courts should consider undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005) (citing *Coe v. Bell*, 161 F.3d 320, 341–42 (6th Cir. 1998)). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co*., 203 F.3d 417, 420 (6th Cir. 2000).

    **II.**       **Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(1) allows dismissal for "lack of jurisdiction over the subject matter" of claims asserted in the complaint. Generally, 12(b)(1) motions fall into two categories: facial attacks and factual attacks. *United States v. Richie*, 15 F.3d 592, 598 (6th Cir. 1994). In a facial attack, the defendant asserts that the allegations in a complaint are insufficient on their face to invoke federal jurisdiction. *Id.* By contrast, in a factual attack, the defendant

disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction, and the court is free to weigh the evidence. *Id*. Plaintiff has the burden of proving subject matter jurisdiction to survive a motion to dismiss under Rule 12(b)(1). *Madison-Hughes v. Shalala,* 80 F.3d 1121, 1130 (6th Cir. 1996). Lack of subject matter jurisdiction is a non-waivable, fatal defect. *Von Dunser v. Aronoff*, 915 F.2d 1071, 1074 (6th Cir. 1990).

Federal Rule of Civil Procedure 12(b)(6) instructs that a court must dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A complaint will be dismissed . . . if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents

4

an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

Rule 12(d) provides that, if "matters outside the pleadings are presented and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." The court, however, "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein" without converting the motion to one for summary judgment. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

## DISCUSSION

### I.     Motion to Amend

Zettel seeks to amend the complaint to add a § 1983 claim against SFC. [DE 9-1, Am. Compl. at 77–79]. The claim alleges that SFC violated her due process rights by seeking to collect on a default judgment secured after unconstitutional service of process. [*Id.*]. SFC argues that the motion should be denied because the amendment would be futile. [DE 12].

### A.     §1983 Standard

"[Section] 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal quotation omitted). To state a claim under § 1983, a plaintiff must show that the defendants while (1) acting under the color of state law, (2) caused the "deprivation of a right secured by the Constitution or laws of the United States. . ." *Burley v. Gagacki*, 729 F.3d 610, 619 (6th Cir. 2013). Put differently, § 1983 only addresses private conduct that is "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

5

To determine whether private conduct is fairly attributable to the State, courts ask two questions:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible. . . . Second, the party charged with the deprivation must be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Id*. "[T]he two prongs merge when analyzing a state official's conduct, whereas they remain distinct when analyzing the conduct of private parties." *Revis v. Meldrum*, 489 F.3d 273, 289 (6th Cir. 2007). *Lugar* also reiterated that "a private party's mere reliance on a state statute is not sufficient to convert that private party into a state actor for purposes of a § 1983 action, and that 'something more' is necessary." *Hill v. Langer*, 86 F. App'x 163, 165–66 (6th Cir. 2004) (quoting *Lugar*, 457 U.S. at 939).

When challenging prejudgment attachment procedures—and only then—"whether there is 'something more' is subject to a 'joint action test.'" *Id*. If a private party "invoke[s] the aid of state officials to take advantage of state-created attachment procedures," they are acting under color of law for purposes of § 1983. *Lugar*, 457 U.S. at 942. This holding has been strictly limited to the prejudgment attachment context. *Id*. at 939 n.21 ("The holding today, as the above analysis makes clear, is limited to the particular context of prejudgment attachment."); *see also Hill*, 86 F. App'x at 167 (holding that the joint action test did not apply to a private party who applied for a writ of restitution after a possession judgment had been ordered); *Revis*, 489 F.3d at 289 ("Later decisions by this court have expressly declined, however, to extend the relatively low bar of *Lugar*'s so-called 'joint action' test outside the context of challenged prejudgment attachment or garnishment proceedings.").

For challenges of other state attachment or garnishment procedures, the Sixth Circuit has established three tests to evaluate whether a private actor meets the state action requirement: (1) the public function test, (2) the state compulsion test, and (3) the symbiotic relationship or nexus test. *See Romanski v. Detroit Ent., L.L.C*., 428 F.3d 629, 636 (6th Cir. 2005). The public function test requires a private party to have exercised powers traditionally reserved to the state, "such as holding elections or eminent domain." *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000). The state compulsion test requires a plaintiff to show that the state "exercise[d] such coercive power or provide[d] such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." *Id*. at 829 (quoting *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir.1992)). The nexus test requires a private party to have such a "'pervasive entwinement,' between the private actor and the state" as to fairly treat their actions as those of the state. *S.H.A.R.K. v. Metro Parks Serving Summit Cnty.*, 499 F.3d 553, 565 (6th Cir. 2007) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 291 (2001)).

    *B.*    *Analysis*

Just as in *Lugar*, there are two ways to interpret Zettel's § 1983 claim against SFC: (1) as alleging SFC's misuse of the Kentucky garnishment statute, or (2) as challenging the garnishment statute as procedurally defective under the Fourteenth Amendment. *Lugar*, 457 U.S. at 941 ("Although it is not clear whether petitioner is referring to the state-created procedure or the misuse of that procedure by respondents, we agree with the lower courts that the better reading of the complaint is that petitioner challenges the state statute as procedurally defective under the Fourteenth Amendment."). The first reading fails to state a claim under § 1983. *See id*. ("private misuse of a state statute does not describe conduct that can be attributed to the State"). The second

reading concerns the garnishment statute—a product of state action—and may be addressed in a § 1983 claim as long as the second element of the state action requirement is also met. *Id.*

First, the amended complaint alleges that the *Lugar* joint participation test applies to SFC's actions. [DE 9-1 at 79]. *Lugar* involved a Virginia law that allowed attachment of the plaintiff's property based solely on an *ex parte* petition by the defendant creditor—before any judgment was issued in the underlying debt collection action. *Id.* at 924. SFC executed the garnishments to collect on the already-issued default judgment. [DE 9-1 at 74]. Because this case involves a challenge to a post judgment garnishment, Zettel is wrong to apply the joint action test. *See Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted) (holding when considering a motion to dismiss, "the district court need not accept a bare assertion of legal conclusions")

The question, therefore, becomes whether the amended complaint alleges facts sufficient for the Court to draw the reasonable inference that SFC may be treated as a state actor under any of the enumerated tests. First, the amended complaint fails to allege any facts to support a finding that garnishment is a public function exclusively reserved to the state. On the contrary, this Court has repeatedly held that wage garnishment does not convert a private party into a state actor. *Stout v. Leadec Corp.*, No. 3:21-CV-171-CHB, 2021 WL 5750181, at *6 (W.D. Ky. Dec. 2, 2021), *aff'd*, No. 21-6234, 2022 WL 18144108 (6th Cir. Aug. 3, 2022) ("Defendants did not become state actors by merely following their legal obligation to garnish Plaintiff's wages"); *Moore v. Branch Banking & Tr. Co.*, No. 4:09-CV-116-JHM, 2010 WL 4962909, at *3 (W.D. Ky. Dec. 1, 2010) (reasoning that a private bank did not become a state actor by garnishing funds according to a valid garnishment order).

As for the public function test, the amended complaint does not allege that SFC acted under the coercive power of the state. [DE 9-1]. To the contrary, it alleges that SFC decided to garnish Zettel's wages on their own accord. [DE 9-1 at 78 ("Using Kentucky's garnishment procedures, SFC applied for a wage garnishment . . .")].

Finally, the amended complaint alleges no facts from which the Court could infer a nexus between SFC and the state. [DE 9-1]. SFC merely acted as a consumer within the state judicial system, which falls far short of establishing "entwinement" with the public entity. *See S.H.A.R.K.*, 499 F.3d at 565 (holding that a one-time contractual relationship between the private entity and the state did not show entwinement); *cf. Brentwood Acad.*, 531 U.S. at 300–02 (finding entwinement where the private association was made up of public schools and its functions were controlled by public school officials).

Because the amended complaint does not allege facts sufficient to find state action, Zettel's § 1983 claim would not survive a motion to dismiss. Thus, the motion to amend is denied for futility. *See Rose*, 203 F.3d at 420.

**II.  Motion to Dismiss**

   *A.  Rooker-Feldman*[2]

Through its decisions in *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983), the Supreme Court established the general rule that district courts lack subject matter jurisdiction to review state court judgments. Under the *Rooker-*

---

[2] Zettel failed to substantively address the applicability of *Rooker-Feldman* in her briefing. [DE 10, Pl.'s Resp. Mot. to Dismiss]. Her Response makes only one mention of the doctrine: ". . .even if declaring the state court default judgment void would violate the *Rooker-Feldman* doctrine, this Court still may declare that entry of the default judgment against Ms. Zettel violates due process of law . . ." [DE 10 at 126]. While this may amount to a concession, the Court nevertheless has an independent duty to determine subject matter jurisdiction. *United States v. Cotton*, 535 U.S. 625, 630 (2002) ("subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived").

9

*Feldman* doctrine, "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (2006). This doctrine, however, does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005).[3] "If a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" *Id*. (citing *GASH Assocs. v. Rosemont,* 995 F.2d 726, 728 (7th Cir. 1993); accord *Noel v. Hall,* 341 F.3d 1148, 1163–1164 (9th Cir. 2003).

The *Rooker-Feldman* doctrine "is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id*. at 284. When applying this doctrine, the Sixth Circuit looks to the source of plaintiff's injury. "If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury . . . then the plaintiff asserts an independent claim." *Berry v. Schmitt*, 688 F.3d 290, 299 (6th Cir. 2012) (citation omitted). To illustrate the difference, the Sixth Circuit has employed a hypothetical:

> Suppose a state court, based purely on state law, terminates a father's parental rights and orders the state to take custody of his son. If the father sues in federal court for the return of his son on grounds that the state judgment violates his federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal. This he may not do ... [On the other hand], [s]uppose a plaintiff sues his employer in state court for violating both state anti-discrimination law and Title VII and loses. If the plaintiff then brings the same

---

[3] "In parallel litigation, a federal court may be bound to recognize the claim- and issue-preclusive effects of a state-court judgment, but federal jurisdiction over an action does not terminate automatically on the entry of judgment in the state court." *Exxon Mobil*., 544 U.S. at 293.

10

> suit in federal court, he will be seeking a decision from the federal court that denies the state court's conclusion that the employer is not liable, but he will not be alleging injury from the state judgment. Instead, he will be alleging injury based on the employer's discrimination.

*McCormick v. Braverman*, 451 F.3d 382, 394 (6th Cir. 2006) (quoting *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 87–88 (2d Cir. 2005).

Another way to determine the source of a plaintiff's injury is to consider whether the relief requested is prospective or retrospective. *See Berry v. Schmitt*, 688 F.3d 290, 300 (6th Cir. 2012) (noting "distinction between backward- and forward-looking claims" in cases challenging jurisdiction under *Rooker-Feldman*). In *Fieger v. Ferry*, an attorney brought suit to challenge Michigan Supreme Court Justices' decisions not to recuse themselves in his past cases and sought an injunction requiring their recusals in the future. 471 F.3d 637, 640 (6th Cir. 2006). The Sixth Circuit affirmed the district court's holding that *Rooker-Feldman* barred plaintiff's claims seeking invalidation of the Justices' past recusal decisions. *Id.* at 644. However, the Sixth Circuit reversed the district court's holding as to plaintiff's prospective constitutional challenge to the Michigan recusal rules, finding that "the threat that the [p]laintiff cannot, and will not, receive a fair hearing before an impartial and independent tribunal is real, immediate, and continuing." *Id.* at 646 (internal quotations omitted). Other cases have similarly distinguished between prospective and retrospective relief. *See Berry v. Schmitt*, 688 F.3d 290 (6th Cir. 2012) (holding *Rooker-Feldman* inapplicable to a request for prospective declaratory and injunctive relief to prevent future enforcement of a bar association's warning letter); *Asai v. Obstetrics & Gynecology Assocs., Inc.*, No. 1:21-CV-111, 2022 WL 3018148 (S.D. Ohio July 29, 2022), *appeal dismissed*, No. 22-3744, 2022 WL 18911946 (6th Cir. Oct. 27, 2022) (holding *Rooker-Feldman* barred a retrospective claim that the underlying state court proceeding violated plaintiff's due process rights); *Hall v. Callahan*, 727 F.3d 450, 453–54 (6th Cir. 2013) (affirming dismissal of claims under *Rooker-Feldman* where

plaintiffs sought a declaration that the state court violated their rights and an injunction on the enforcement of the state court judgment).

To determine whether *Rooker-Feldman* works to bar any of Zettel's claims, the Court first looks to the complaint. *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 402 (6th Cir. 2020) ("a court cannot determine the source of the injury without reference to [the plaintiff's] request for relief") (internal quotations omitted). Zettel raises four distinct claims, with accompanying class allegations for some. [DE 1]. Three of the claims concern the state court default judgment and garnishment. [*Id*. at 6–7]. The fourth seeks a declaration under the Declaratory Judgment Act that the Kentucky long-arm statute is facially unconstitutional. [*Id*. at 6]. The Court will address the claims separately.

### i. FDCPA, Unjust Enrichment, and Wrongful Garnishment Claims

First, Zettel alleges that SFC violated the FDCPA by "[g]arnishing Plaintiff's wages based on a *void judgment*" and "[t]hreatening to garnish Plaintiff's wages based on a *void judgment* and threatening to enforce and otherwise collect a *void judgment* from her." [DE 1 at 6 (emphasis added)]. Similarly, the state law unjust enrichment and wrongful garnishment claims hinge on the allegations that "[i]t is inequitable for SFC to retain funds that it received pursuant to garnishments served pursuant to a *void judgment*" and that the "wage garnishments were based on a *void judgment*, which makes the garnishments wrongful." [DE 1 at 6]. While Zettel has avoided directly asserting that the state court judgment violated her due process rights—a claim clearly barred by *Rooker-Feldman*—the complaint attempts to conceal the same allegation within three other claims. *See Hall v. Callahan*, 727 F.3d 450, 453–54 (6th Cir. 2013) (affirming dismissal of claims under *Rooker-Feldman* where plaintiffs requested that the district court void the state court decision for violating their due process rights). Because each of the claims depends on a

declaration by this Court that the state default judgment is void, there is no way for the Court to award the relief she seeks without voiding the state judgment. Thus, the FDCPA, unjust enrichment, and wrongful garnishment claims act as a trojan horse—concealing the real issue of the state court judgment within them. Just as in *Fieger* and *Hall*, this amounts to an impermissible direct attack on a state court judgment. *Hall*, 727 F.3d at 454; *Fieger v. Ferry*, 471 F.3d at 644.

Stated differently, Zettel's FDCPA and state law claims are retrospective. Considering the hypothetical posed in *McCormick*, Zettel's claims are more akin to the father's than the employee's. *McCormick*, 451 F.3d at 394 (quoting *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 87–88 (2d Cir. 2005). The father claimed that the court's decision was what violated his due process rights. *Id*. In contrast, the employee-plaintiff's injury arose from discrimination by a private party—their employer. *Id*. Zettel does not allege that SFC abused the state court process or engaged in fraud. [*See* DE 1]. Instead, her injury arises from the Kentucky court's decision that service was effectuated even though the summons and complaint were returned "unclaimed." [DE 1 at 3]. Just like the father's claims, Zettel's alleged injury arises from the default judgment—not from SFC's behavior. *McCormick*, 451 F.3d at 394. This type of claim is squarely barred by *Rooker-Feldman*. *See Hall*, 727 F.3d at 453–54 (affirming dismissal of claims under *Rooker-Feldman* where plaintiffs sought a declaration that the state court violated their rights and an injunction on the enforcement of said judgment); *Evans v. Cordray*, 424 F. App'x 537, 538 (6th Cir. 2011) ("If the source of the plaintiff's injury is the state-court judgment itself, then the *Rooker-Feldman* doctrine bars the federal claim.")

      ii.    Constitutional Claim

Zettel's final claim requests a declaration that the Kentucky long-arm statute is "unconstitutional to the extent that it allows for a defendant to be deemed served with process upon

13

service of a summons and complaint upon the Kentucky Secretary of State when the Kentucky Secretary of State's attempted actual service of the summons and complaint upon the defendant is returned unclaimed." [DE 1 at 6]. *Rooker-Feldman* does not bar challenges to the constitutionality of a state statute, separate and apart from its application in any underlying case. *Hall*, 727 F.3d at 453 (affirming general challenge to constitutionality of state statute not barred under *Rooker-Feldman*); *Fieger v. Ferry*, 471 F.3d at 646 (holding *Rooker-Feldman* did not bar a claim that a state law was unconstitutional "as applied in future cases"). Facial constitutional challenges are seen as requests for prospective relief, independent of past state court judgments, and therefore outside the purview of *Rooker-Feldman*. *See Fieger v. Ferry*, 471 F.3d at 646. Just as in *Berry*, Zettel's success on the declaratory judgment claim would not overturn the default judgment. "The only relief would be to prohibit future enforcement, making *Rooker–Feldman* inapplicable." *Berry*, 688 F.3d at 300.

### B. Standing

After applying *Rooker-Feldman*, only the declaratory relief claim remains. Importantly, Zettel does not allege that her rights were violated under the statute, but that the statute itself is facially unconstitutional. [DE 1 at 6]. Although SFC did not raise standing as grounds for dismissal, courts have an ongoing duty to consider *sua sponte* a plaintiff's standing to bring suit. *Answers in Genesis of Kentucky, Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459 (6th Cir. 2009) ("federal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte*") (internal citation omitted).

Article III courts are limited to deciding "cases and controversies." U.S. Const. Art III § 2. The requirement of standing "limits federal court jurisdiction to actual controversies so that the judicial process is not transformed into 'a vehicle for the vindication of the value interests of

14

concerned bystanders.'" *Coal Operators & Assocs., Inc. v. Babbitt*, 291 F.3d 912, 915 (6th Cir. 2002) (quoting *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 473 (1982)). A plaintiff's standing must exist at the commencement and throughout the duration of the suit. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000).

In general, to establish standing a plaintiff must show (1) that they have "suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth*, 528 U.S. at 180–81 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "In the context of a declaratory judgment action, allegations of past injury alone are not sufficient to confer standing. The plaintiff must allege and/or demonstrate actual present harm or a significant possibility of future harm." *Fieger v. Michigan Supreme Ct.*, 553 F.3d 955, 962 (6th Cir. 2009) (quoting *Fieger v. Ferry*, 471 F.3d at 643 (internal citations and quotation marks omitted)); *Peoples Rts. Org., Inc. v. City of Columbus*, 152 F.3d 522, 527 (6th Cir. 1998) ("Nevertheless, when seeking declaratory or injunctive relief, the plaintiff must demonstrate actual present harm or a significant possibility of future harm to justify pre-enforcement relief."); *see also Johnson v. Lyon*, 406 F. Supp. 3d 651 (W.D. Mich. 2018) (holding plaintiffs who remained under a present obligation to abide by the challenged rule had standing to seek declaratory judgment, while plaintiffs against whom the threat of enforcement was "hypothetical" lacked standing).

In *Fieger v. Michigan Supreme Ct.*, Fieger, an attorney, challenged the Michigan Rules of Professional Conduct as violating the First and Fourteenth Amendments. 553 F.3d at 957 (6th Cir.

2009). He argued that he possessed standing because he had "twice been subjected to disciplinary proceedings under the rules," which produced a "significant possibility" of future disciplinary proceedings. *Id*. at 962. The Sixth Circuit disagreed, reasoning that the risk of future discipline was "simply too attenuated to establish the injury in fact required to confer standing." *Id*. at 967 (citing *Grendell v. Ohio Supreme Ct.*, 252 F.3d 828, 833 (6th Cir. 2001) (holding that an attorney lacked standing to facially challenge a disciplinary rule when the threat of future sanction was "highly conjectural, resting on a string of actions the occurrence of which is merely speculative")).

In this case, the complaint does not allege any facts demonstrating "actual present harm or significant possibility of future harm." *Fieger v. Michigan Supreme Ct.*, 553 F.3d at 962 (internal citations and quotation marks omitted). The declaratory judgment action asks this Court to hold that the Kentucky long arm statute is facially unconstitutional. [DE 1 at 6]. Zettel's injury occurred when she was served under the allegedly unconstitutional statute. [*Id*. at 5–6]. This is an allegation of past injury. Zettel gives the Court no reason to believe that she will once again face service of process under the Kentucky long-arm statute. [*See* DE 1; DE 10]. This alone precludes standing. *See Madison-Hughes v. Shalala,* 80 F.3d 1121, 1130 (6th Cir. 1996) (holding plaintiff has the burden of proving subject matter jurisdiction to survive a motion to dismiss pursuant to Rule 12(b)(1)). However, even if Zettel had alleged a significant possibility of future harm, the chain of events which would lead to her involvement in another civil action in Kentucky state courts is "highly conjectural." *Fieger v. Michigan Supreme Ct.*, 553 F.3d at 967. Because Zettel lacks standing to bring the action, the Court need not consider whether to exercise its discretion to consider the claim under the Declaratory Judgment Act.

Having dismissed each of Zettel's individual claims for want of jurisdiction, the Court also dismisses the corresponding class allegations on the same grounds. *See Crosby v. Bowater Inc.*

*Ret. Plan for Salaried Emps. of Great N. Paper, Inc.*, 382 F.3d 587, 597 (6th Cir. 2004) ("[w]here the named plaintiff's claim is one over which federal jurisdiction never attached, there can be no class action[]") (internal quotations omitted).

## CONCLUSION

Having thus considered the parties' filings and the applicable law, and being otherwise sufficiently advised, the Court **ORDERS AS FOLLOWS**:

(1) Plaintiff's motion to amend [DE 9] is **DENIED**.

(2) Defendant's motion to dismiss [DE 4] is **GRANTED**.

(3) Plaintiff's motion to certify [DE 6] is **DENIED** as moot.

(4) The Court will enter separate Judgment.

January 29, 2024

Rebecca Grady Jennings, District Judge
United States District Court